KATHARINA EGGER v. JOHN B. EGGER, Executor of Will of FREDOLIN EGGER, et al., Appellants.

**Division One, January 4, 1910.**

1. **APPEAL: From Probate Court: Affidavit: Sufficiency.** An affidavit for an appeal from the probate court, in these words, after the caption giving the style of the case: "B. G. Thurman, for and on behalf of the plaintiff, Katharina Egger, being duly sworn, upon his oath says that this application for an appeal is not made for vexation or delay, but because he believes the appellant to be injured by the judgment of the probate court. This appeal is taken from the judgment on the merits. B. G. Thurman, Appellant," and sworn to, is sufficient, it appearing therefrom that Mr. Thurman acted as agent of the appellant, and it elsewhere appearing that he was not a voluntary agent, but an attorney of record in the case.

2. ————: ————: ————: ————: **No Objection In Circuit Court.** An objection to the sufficiency of the affidavit for an appeal from the probate court, if not made in the circuit court, comes too late when made for the first time in the Supreme Court.

3. **CONFIDENTIAL RELATION: Husband and Wife.** When the validity of a contract entered into between a husband and wife, by which she agrees to accept a stipulated monthly sum in lieu of dower in his personal estate, is made the basis of the executor's defense to her suit, the court will take into account the law of fiduciary relations.

4. **MARRIED WOMAN'S ACT: Contracting Away Dower.** All distinctions theretofore recognized by the law concerning a married woman, in relation to her property rights and her contracts, were not abolished by the Married Woman's Act of 1889 (Sec. 4335, R. S. 1899). That statute did not repeal any of the statutes then existing in behalf of the wife.

5. **DOWER: Right of Election: Renunciation of Will.** Section 2937, R. S. 1899, gives the widow absolutely a child's share in the personal estate of her husband, and when by the will he has given her other property in lieu of such interest, it is not necessary for her to file a renunciation of the will, but she can ignore it, and unless she has bargained away her share, or is estopped to assert her right to it, she is entitled to demand it without ever having filed any election.

6. ———: **Contracting Away: No Consideration.** A married woman's contract entered into by her out of a desire to be free from the annoyances and embarrassments of business cares, by which her husband agreed to bequeath by his will to a trustee $20,000 in mortgage notes out of the income from which she was to be paid $75 per month, the balance to go to his other legatees at her death, in consideration of which promise on his part she released all other claims of every kind in his estate, which consisted of $100,000 of realty and $200,000 in personalty, is not supported by a valuable consideration. It is a nude contract, a mere promise to make a will in a certain way, and though he afterwards made his will in accordance with the agreement, it does not deprive her of dower. Nor would it be binding on his estate if there had been no will and the promised provision for her in the contract had exceeded the value of her dower and her statutory share of the estate.

7. ———: ———: ———: **Subsequent Diminution in Value of Estate: Fiduciary Relation.** Even though it be conceded that a possible diminution in the value of the estate between the making of said contract and the death of her husband formed an appreciable consideration to support the contract, yet, under the circumstances of this case, there was a strong fiduciary relation between her and the husband at the time the contract was entered into, and that put the burden on the legatees to show that she was fairly treated and no advantage taken of her.

8. ———: ———: **Estoppel.** An acceptance by the widow, after her husband's death, of a small amount of what would be her statutory share of the estate, even though it was the exact amount she agreed in the contract with her husband she would accept in lieu of such share and the exact amount also designated in his will as the sum which should be paid to her, does not estop her from claiming what the statute gives her. The executor was not misled thereby. Nor does her execution of a deed to land in which her husband had invested her own money and her acceptance of her share of the proceeds, estop her.

9. ———: ———: **No Consideration: Election: Estoppel.** A contract signed by the widow after her husband's death, de-

claring that she elected to accept the provisions of the will in lieu of dower, is without consideration, and if it in no wise misled the executor or other legatees to their disadvantage, did not work an estoppel.

10. ———: ———: Res Adjudicata. The wife brought a suit in the circuit court for the admeasurement of dower in her deceased husband's estate, joining all the heirs, legatees and devisees as defendants, and the judgment was in her favor. Later she brought this suit in the probate court against the same defendants, but joining one of them as executor of the husband's will, the object of which is to establish her right to a child's share in the personal estate. The subject-matter of both suits is the same, and the defense in each was that she had during the marriage entered into a contract by which she agreed to accept a certain monthly sum for life in lieu of dower, in consideration of the husband's promise therein to provide by his will for the payment of said monthly sum to her, which he did. *Held*, that the former suit was not *res adjudicata* of this.

11. EVIDENCE: Exclusion: Incompetent on any Ground. If the evidence was incompetent on any ground, it was properly excluded, and it matters not on what ground it was excluded.

12. ———: Oral Marriage Contract. In the suit by the widow to establish her right to a child's share in her husband's personal estate of which she had been deprived by his will, the executor offered to prove that at the testator's death she had said it was the understanding between her and her husband before marriage and after marriage that her property was to be returned to her children and his property was to be divided among his children, and that was the understanding up to the time of his death. *Held*, incompetent, for several reasons; first, there was a written agreement between them on the subject, and the oral understanding was merged into that; second, the agreement, if made, was made in another State, and no evidence was proffered to show that an oral contract between husband and wife before or after marriage was valid under the laws of that State; and, third, no such contract was pleaded.

13. APPEAL: Finding of Facts: Binding on Respondent. Where the judgment is wholly in respondent's favor, he is not concluded by any finding of facts made by the trial court to which he did not except.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

Egger v. Egger.

*Barbour & McDavid* and *Cole, Burnett & Moore* for appellants.

(1) When in the year 1898 the plaintiff contracted with her husband, Fredolin Egger, that in lieu of what she would be entitled to take of his estate as his wife upon his death, under the statute, he should provide by his will that the payment of $75 per month should be secured to her so long as she should survive him, she had the legal right and power to enter into such contract with him and thereby make it a valid and legal contract enforceable against either of the parties thereto, their heirs and legal representatives. R. S. 1899, sec. 4335; O'Day v. Meadows, 194 Mo. 588; Rice, Stix & Co. v. Sally, 176 Mo. 107; Donavan & Boyd v. Griffith, 215 Mo. 149. The business divisibility of husband and wife, now existing in Missouri as contractual integers (where at common law and in this State prior to the Married Woman's Acts, they were one), is complete. Clay v. Mayer, 183 Mo. 158; Bank v. Hageluken, 165 Mo. 451; Schubach v. McDonald, 179 Mo. 189. (2) The contract was based upon a good, sufficient and lawful consideration, and the facts relating to such contract being conceded and undisputed the court committed error in finding and adjudging that there was no consideration for said contract. Forbs v. Railroad, 107 Mo. App. 673; Fullerton v. Schloss, 104 Mo. App. 195; Woodruff v. Woodruff, 90 S. W. 266; Wood v. Broadley, 76 Mo. 23; Moss v. Green, 41 Mo. 389; Campbell v. Van Housten, 44 Mo. App. 231; Penn v. Brashear, 65 Mo. App. 24; German v. Gilbert, 83 Mo. App. 411. A cancellation of an oral contract is a good consideration for a substituted written contract, and one agreement may be substituted for another. Leonard v. Railroad, 54 Mo. App. 293; Pottery Co. v. Folckemer, 131 Mo. App. 106; Nordyke v. Kehlor, 155 Mo. 643. The quality, and not the quantity, of consideration for a contract, determines its

sufficiency; the least injury or detriment suffered by the promisee or a third person, or the least benefit or advantage to the promisor, being sufficient to support the contract. Columbia Lamp Co. v. Am. Elec. Mfg. Co., 64 Mo. App. 115; 1 Parsons on Contracts (7 Ed.), p. 465; Ib., p. 477. (3) The money, $290, had by plaintiff at her marriage with Fredolin Egger, deceased, thereby became the money of her husband. The $1.140.68 afterwards acquired by her and reduced to his possession and after his death paid out of his estate at the time she ratified her contract of 1898 by deed, was a good and valid consideration for the deed and the contract so ratified. Benne v. Schnecks, 100 Mo. 256; Roberts v. Walker, 82 Mo. 200. (4) The attempted election of plaintiff is not a statutory election, that is, it, as made and in the case made, cannot be based or predicated upon a right conferred upon her by any statute of the State relating to election by a widow. Right of election is given in certain cases by sections 2939, 2940, 2941, 2944, 2948, and 2949, R. S. 1899. Saunders v. Saunders, 144 Mo. 488; 4 Words and Phrases, p. 3820; 1 Pomeroy's Equity Jur., pp. 844, 845, sec. 507; Welch v. Anderson, 28 Mo. 299; Wash v. Wash, 189 Mo. 359. (5) Plaintiff is estopped by her contract, deed and acts *in pais* to claim dower in the personal estate of her husband. Unquestionably after a married woman becomes discovert, she stands before the law just as any other person *sui juris*, and must be held to answer to the same law of estoppel, the same accountability. Harrison v. McReynolds, 183 Mo. 533; Bush v. Peirsol, 183 Mo. 505; Leavy v. Cook, 171 Mo. 302; 16 Cyc., 679; Kesner v. Trigg, 98 U. S. 75; Meddis v. Kenney, 176 Mo. 202; Nelson v. Hirsh, 102 Mo. App. 498. The general rule is that the widow's election between her legal rights as widow and those given her by her husband's will, if made by her with knowledge of the facts necessary to an intelligent choice and she makes her choice without any fraud, misrepresenta-

tion, duress or inequitable contrivance by others interested in the estate, is binding upon her and cannot be revoked at her pleasure, merely because on afterthought she prefers the provision she had once rejected. Dean v. Hart, 62 Ala. 308; Walker v. Upson, 74 Conn. 128; Gibbon v. Gibbon, 40 Ga. 562; Wilson v. Wilson, 145 Ind. 659; In re Franke's Estate, 97 Iowa 704; Reville v. Dubach, 60 Kan. 572; Grider v. Eubanks, 12 Bush 510; Dow v. Dow, 36 Me. 211; Adams v. Adams, 5 Met. (Mass.) 277; Koster v. Gellen, 124 Mich. 149; Fairchild v. Marshall, 42 Minn. 14; Kaes v. Gross, 92 Mo. 647; Spalding v. Herschfield, 15 Mon. 253; Schweitzer v. Bonn, 38 Atl. (N. J.) 302; Katz v. Schnaier, 87 Hun (N. Y.) 343. (6) The action for dower in certain land did not operate by reason of the judgment therein obtained as *res adjudicata* in a subsequent proceeding in the probate court against the executor of her husband's will for an order of distribution of the personal estate of her deceased husband. 16 Cyc., p. 712; Ib., p. 713. To constitute a judgment in a former suit, a barrier in another suit, four conditions must co-exist, identity of the thing sued for, identity of the cause of action, identity of parties to the action, and identity of the quality of the persons for or against whom the claim is made. Winham v. Kline, 77 Mo. App. 36; Pickel Stone Co. v. Wall, 108 Mo. App. 500; Perkins v. Goddin, 111 Mo. App. 429. But the matter does not end with the foregoing. Personal property passes to the executor or administrator and he alone (under the direction of the court) and not the heir, has the right of dominion over it, unless the probate court shall, by order, dispense with any administration. McMillan v. Wacker, 57 Mo. App. 220; Smith v. Denny, 37 Mo. 20; Hounsmon v. Moore, 18 Mo. App. 406; Griswold v. Mattix, 21 Mo. App. 282; 41 Mo. App. 546; 58 Mo. App. 408; 64 Mo. App. 270; Hellman v. Wellenkamp, 71 Mo. 407; Green v. Tittman, 124 Mo. 372; Grand Lodge v. Dister, 77 Mo. App. 608;

Tye v. Tye, 88 Mo. App. 330; Perkins v. Goddin, 111 Mo. App. 429. If the suit as to dower in the land was the same cause of action as here, then plaintiff's contention as to *res adjudicata* defeats her present action. Green v. Von der Ahe, 36 Mo. App. 394. "'The form of action pursued is immaterial.'" Moran v. Plankinton, 64 Mo. 337; Railroad v. Traube, 59 Mo. 355; Koenig v. Morrison, 44 Mo. App. 414; Hoffman v. Hoffman, 126 Mo. 497; Flaherty v. Taylor, 35 Mo. 451.

*E. P. Mann* and *H. W. Timmonds* for respondent.

(1) The plaintiff, under the law, is entitled to dower in the personal estate of Fredolin Egger, in all the property that he owned at the time of his death equal to a child's part. Sec. 2937, R. S. 1899. The dower interest of the widow in the personal estate of her deceased husband is diminished by the amount turned over to her by the administrator, or executor, for her support, and this interest is expressly called dower in personal estate. Sec. 108, R. S. 1899. This right in the personal property, as well as the real estate, is considered and treated as dower. Hoyt v. Davis, 21 Mo. App. 240; Haniphan v. Long, 70 Mo. App. 352; sec. 4602, R. S. 1899; Lilly v. Menke, 143 Mo. 147. The wife had no interest in the husband's personal property before his death, and he had the right to sell and dispose of his personalty free from any claim or interest of the wife. The will did not pass the title to the personal property before the death of Fredolin Egger. A will only becomes operative after the death of the testator. After the death of Fredolin Egger, the law vested plaintiff with a dower interest in the personal property of which he died possessed, which right is superior to any right that the husband has to dispose of it by will, for it is expressly provided by the Statute of Wills that he can only make a will subject to her right. And it has been so repeatedly held by this court. Lilly v. Menke, 143 Mo. 147; Spratt

v. Lawson, 176 Mo. 175; Rice v. Waddill, 168 Mo. 99.
(2) Sections 2948 and 2949 entitle a widow to re-
nounce the will of her husband within twelve months
after the proof of the will, and the widow is entitled
to make such renunciation, notwithstanding no real
estate is passed to her by the will. Bretz v. Matney,
60 Mo. 444; Register v. Hensley, 70 Mo. 189; Dough-
erty v. Barnes, 64 Mo. 161; Spratt v. Lawson, 176 Mo.
175; Farris v. Coleman, 103 Mo. 352. (3) The defense
of a verbal post-nuptial contract is not sustained by
the testimony. No such contract is in evidence. A
marriage contract must be in writing, acknowledged
or proven by one subscribing witness. Sec. 4324, R. S.
1899; Mowser v. Mowser, 87 Mo. 437; Moran v. Stew-
art, 173 Mo. 214. (4) The post-nuptial contract in
writing is a nullity for want of a consideration. It is
not a legal jointure, because legal jointures can only
be made of real estate, and cannot be short of an es-
tate for life. Saunders v. Saunders, 144 Mo. 482; Mo-
ran v. Stewart, 173 Mo. 214. This contract amounts
to nothing more than an agreement to make a will.
The husband parted with nothing. The wife got noth-
ing. The wife could not have compelled the husband
to comply with the agreement; neither could she have
maintained an action for damages for its breach. So
that it is quite certain that it is neither a legal nor
equitable jointure. Moran v. Stewart, 173 Mo. 214;
Spratt v. Lawson, 176 Mo. 175; King v. King, 184 Mo.
99; Mowser v. Mowser, 87 Mo. 440; Johnson v. John-
son, 23 Mo. 561; Logan v. Phillips, 18 Mo. 23. (5)
Where the widow is not given any real estate by the
will, the statute providing for renunciation does not
apply. It is certainly clear that the law entitles the
widow to certain interests in her husband's property,
both real and personal, and the husband cannot de-
prive her of these rights by will. The law fixes them.
The Statute of Wills expressly so says. Spratt v.
Lawson, 176 Mo. 175. (6) Where what the widow

takes under the will is only a part of what she is entitled to under the law she is not required to make an election, and such act does not constitute an election. She may still claim the balance of what she is entitled to under the law, provided she does so within a reasonable time. That is, provided the circumstances are not such as to create an estoppel *in pais,* which will be hereafter considered. Burgess v. Bowles, 99 Mo. 543; Ward v. Ward, 25 N. E. 1013; Carper v. Crowl, 36 N. E. 1040; 11 Am. & Eng. Ency. Law (2 Ed.), pp. 66 and 67. (7) The acceptance of the will made by plaintiff January 9, 1902, was at a time when she was not required by law to make an election. Therefore, it was no election. Burgess v. Bowles, 99 Mo. 543; Watson v. Watson, 28 Mo. 300; Ward v. Ward, 25 N. E. 1013. (8) In order to constitute a binding election in equity, it is not only necessary for the parties to be fully informed of their rights, but the party sought to be bound must be in a position not to be able to restore the parties affected by such an election to the conditions that existed before the election was made. 2 Story's Eq., sec. 1097; Reynard v. Spence, 4 Beav. 103; In re Dunphy's Estate, 81 Pac. (Cal.); Shopwith v. Mangham, 30 Beav. 235; Carper v. Crowl, 36 N. E. 1040; Wake v. Wake, 1 Ves. Jr. 335. (9) The act of receiving the payments provided for by the will for eleven months does not constitute an estoppel. This was much less than she was entitled to under the law. It was only a small proportion of what she was entitled to under the law. Whatever she has received she is chargeable with before receiving her distributive share of the personal estate. There can be no estoppel *in pais* where the act of the party sought to be estopped works no injury to the party pleading the estoppel. Beland v. Brewing Ass'n, 157 Mo. 593; Burke v. Adams, 80 Mo. 513; Garesche v. Levering Inv. Co., 146 Mo. 451; 1 Herman on Estop., p. 5; Ward v. Ward, 25 N. E. 1012; In re Dunphy's Estate, 81 Pac. 315; Yorkley v.

Stimson, 1 S. E. 452.   To constitute an estoppel it must appear that the party acted with full knowledge of all material facts and circumstances, and with full knowledge of his legal rights.   Burke v. Adams, 80 Mo. 514; Garesche v. Levering Inv. Co., 146 Mo. 451.   (10) The real issues in this case were determined in the suit for dower in the real estate against these defendants, and the judgment in the former suit is a complete bar to the defense interposed in this case.   A judgment in a former suit as to one or more issues is conclusive in a subsequent suit involving the same issues between the same parties or their privies.   1 Herman on Estop., secs. 100-106, 107, 108, 109 and 111; Freeman on Judg., sec. 249; 2 Black on Judg., secs. 504, 506, 609, 610, 613, 614 and 725; 1 Greenleaf on Ev. (14 Ed.), secs. 522 and 523, note B; Railroad v. Levy, 17 Mo. App. 501; Brown v. Railroad, 96 Mo. App. 165; Jones v. Silver, 97 Mo. App. 231; Hoyt v. Green, 33 Mo. App. 205; City of Springfield v. Plummer, 89 Mo. App. 529; Edgell v. Sigerson, 26 Mo. 583; Ridgley v. Stillwell, 27 Mo. 128; Young v. Byrd, 124 Mo. 590; State ex rel. v. Branch, 134 Mo. 592; Wiggins v. St. Louis, 135 Mo. 569; Donald v. Wright, 147 Mo. 639; Norton v. Doherty, 3 Gray 372; Biglow v. Windsor, 1 Gray 299; Garland v. Smith, 164 Mo. 22; Edmondston v. Carter, 180 Mo. 523; Rodney v. Gibbs, 184 Mo. 13; 23 Cyc., pp. 1300, 1306 and 1299, note 95; Watson v. Richardson, 110 Iowa 698; Brack v. Boyd, 211 Ill. 290; Hanson v. Hanson, 64 Neb. 506; State ex rel. v. Williams, 221 Mo. 227; Goodenow v. Litchfield, 59 Iowa 228; Baxter v. Myers, 85 Iowa 328.   (11)   The word "privies," as applied to the doctrine of *res adjudicata* is more extensive than in the ordinary legal acceptation of that term.   It is made to include such relations as master and servant, principal and agent, trustees and *cestui que trust,* executor and legatee.   It includes everybody required to answer over to the party against whom or for whom judgment is rendered, and has an interest in the subject of the ac-

tion, or has employed counsel and taken a part, either by themselves or through others, in the suit. 1 Herman on Estop. and Res Adjudicata, sec. 150; 1 Greenleaf on Ev., secs. 523 and 532; Freeman on Judg., sec. 163; 2 Black on Judg., sec. 561; State ex rel. v. Coste, 36 Mo. 438; Strong v. Ins. Co., 62 Mo. 289; Henry v. Wood, 77 Mo. 277; Johnson v. Realty Co., 177 Mo. 581; Edmondston v. Carter, 180 Mo. 515; Cooley v. Warren, 53 Mo. 166; Wood v. Ensel, 63 Mo. 193; Railroad v. Levy, 17 Mo. App. 501; Rieschick v. Klingelhoefer, 91 Mo. App. 430; Stoddard v. Thompson, 31 Ohio 80; Markham v. Thompson, 23 La. 685; Larunn v. Wilmer, 35 Iowa 344; Norton v. Doherty, 3 Gray 372; Biglow v. Windsor, 1 Gray 299; Emery v. Fowler, 39 Me. 326; Doremus v. Root, 23 Wash. 710; Chappin v. Curtis, 23 Conn. 388; Davis v. Smith, 79 Me. 351; Plumb v. Goodnow, 123 U. S. 563; City of Aurora v. West, 74 U. S. 82; Hardaway v. Drummond, 73 Am. Dec. 730; Cunningham v. Ashley, 45 Cal. 485; Shannon v. Taylor, 16 Tex. 413; Hooper v. Hooper, 9 S. E. 937; Molton v. Mill, 10 N. C. 490; Flint v. Bodge, 92 Mass. 128; Colton v. Onderdonk, 10 Pac. 395; Daniel v. Gum, 45 S. W. 468.

VALLIANT, J.—Plaintiff, the widow of Fredolin Egger, deceased, instituted this proceeding in the probate court of Barton county at the May term, 1905, against the executor of her deceased husband's will, and heirs and the distributees of his estate, the object of which is to have distribution of the personal property of the estate of her late husband and giving to her one-sixth thereof, that being equal to a child's share as provided in section 3937, Revised Statutes 1899. The judgment of the probate court being against her, she appealed to the circuit court of that county; in that court, on application for a change of venue by the executor, the cause was transferred to the circuit court of Greene county, where it was tried and judgment was

rendered in favor of the widow, adjudging that she was entitled to a share equal to a child's share of the personal property of the estate, amounting to $21,964.45, less what she had already received, leaving a balance due her of $20,739.45, for which, with interest at six per cent from December 1st, 1903, until paid, and costs, judgment was rendered. The cause has come to this court on the appeal of the executor and the other defendants, from that judgment. There is really no dispute as to the material facts in the case, although there is a little conflict in the evidence on some non-essential points. The only grounds on which the executor resists the widow's claims are, first, an alleged contract, made between the husband and wife by which she agreed to accept in lieu of dower and all other claims against his estate the sum of $75 a month during her life, and, second, her estoppel by her acceptance from the executor of monthly payments at that rate and on that account for a period of about ten months after her husband's death, also her acceptance from the executor of the sum of about $1430, the estimated amount of money which the wife had at the time of her marriage and received afterwards and which she gave into the hands of her husband; that these payments were made to her by the executor as in conformity to the contract and on her signing and delivering to him shortly after the probating of the will a paper writing to the effect that she accepted the provisions made for her in the will.

The undisputed facts are as follows: The plaintiff and her deceased husband were natives of Switzerland, they came to this country in 1866 and married in that year after they came here, in the State of Wisconsin. At the time of their marriage the plaintiff was a widow with two children, daughters by her former husband, and Fredolin Egger was a widower with six children by his former wife; one of his children died unmarried and without issue, leaving five who are now beneficiaries under this will. There was no child born of this

marriage, but their respective children of the former marriages were all brought up together in one family and so lived until they were grown and married and settled in their own homes. In 1874 the family moved to Missouri and settled in Barton county; the plaintiff's two daughters having previously married were left in Wisconsin.

At the time of her marriage, in 1866, the plaintiff had in hand $290 and in expectancy from the old country about $1000, which expectancy was afterwards realized and she gave both these sums into the hands of her husband. It does not appear how much money or property the husband had at the date of the marriage, but the inference to be drawn from the statement in appellant's brief is that it was not great; the statement is: ''Fredolin Egger was at the time of his marriage with plaintiff engaged in business in New Glarus, Wisconsin, conducting the only local store, owning some property and making some loans.'' But the result shows that after he came to Missouri he was so successful in his business that when he died, in 1901, he left an estate worth about $300,000, of which about $190,000 was personal property.

After they came to Missouri the husband invested the money he had received from his wife, about $1400, in a 160 acres of Barton county land, and took the deed in her name and the title so stood at the time of his death.

February 21st, 1898, the plaintiff and her husband signed and acknowledged before a notary the following paper-writing, which, because its legal effect is the chief point of controversy, we will quote in full, to-wit:

''Know all men by these presents, That I, Katharina Egger, wife of Fredolin Egger, and being now myself of the age of seventy years, and having a great desire that I shall in no way be embarrassed or annoyed by cares of a business nature or character in case I should be deprived by the fatalities incident to human

life of the care and protection of my companion and
beloved husband, that I have requested, induced and
agreed with my said husband this day that for my sup-
port, comfort and maintenance, in case of his demise,
prior to my death, that he shall by will make the fol-
lowing provision, in effect, in my behalf, that is to say:
My said husband, Fredolin Egger, Sr., shall provide by
good and sufficient will out of his estate on his demise,
and in case that I shall survive him, there shall be
placed in the hands, charge, control and custody of
Jno. B. Egger, or of some other trustee, the sum of
twenty thousand dollars ($20,000.00), in cash, or in
notes, or bonds secured by first mortgages or deed of
trust upon real estate situate in the counties of Barton,
St. Clair and Bates, in the State of Missouri, or in any
county of Missouri, adjoining the county of Barton; no
such notes or bonds so secured upon real estate to be of
such amount, in the aggregate, when secured by any
mortgage or trust deed, as to exceed two-thirds the
value of the land pledged, mortgaged or conveyed to
secure such notes or bonds.

"And further, that from such fund of twenty thou-
sand dollars, and its accumulations, that I shall be paid
by such trustee, or his successor in trust, the sum of
seventy-five dollars ($75.00) per month, monthly during
the term of my natural life.

"That in the consideration of the premises and the
agreement of my said husband to make the provision
in his last will and testament to the effect aforesaid, I
have agreed to, and I do now agree to, and hereby do
release, relinquish and acknowledge full satisfaction
for any charge for any and every claim, demand, right
to, or interest in, or claim against the lands, property,
effects and estate of my said husband, Fredolin Egger,
wherever situated and of whatever nature or kind,
real, personal or mixed, including the right of dower
and homestead, and including all such claims, rights,

225 Sup—9

interests or demands, whether the same should exist now in my favor or whether the same should arise by reason of the law upon the death of my said husband, save and except the claim, right provision for the setting aside of the fund of twenty thousand dollars in cash, or paper, secured upon real estate as hereinbefore mentioned, and the payment for my support, comfort and maintenance in case of the death of my said husband, of the monthly payment as hereinbefore stated.

"And the said Fredolin Egger upon his part agrees at the request of his wife, Katharina Egger, and in consideration of the premises, to make the provision by his last will and testament of placing in the hands of Jno. B. Egger, or some other trustee, the sum of twenty thousand dollars, in cash or in notes or bonds, secured by first liens upon real estate, as hereinbefore stated, and situated in the counties as hereinbefore stated for the support, comfort and maintenance of said Katharina Egger in case of his death as hereinbefore stated prior to her demise.

"FREDOLIN EGGER (Seal.)

"KATHARINA EGGER (Seal.)

"Witnesses to signatures:
          "JACOB MARTY.
          "JAMES B. LILLARD."

A few days after the execution of that document, to-wit, February 25, 1898, Fredolin Egger made his will wherein after the following preamble: "First, in order to provide for the support, comfort and maintenance of my beloved wife, Katharina, after my death and at her request and in consideration of her release and discharge of all claims, demands or interest in, to or against my estate, including especially the right or claim of homestead and dower in my real estate, property and effects and including all claims for statutory allowance to her as my widow should, should she sur-

vive me, and in pursuance of agreement and understanding between me and my said wife heretofore had and by us reduced to writing on the twenty-first day of February, A. D. eighteen hundred ninety-eight (1898)," he made provision to have his wife paid $75 a month during her life as called for in the agreement of February 21st, and all the residue of his property he devised and bequeathed to his five children. He died November 29, 1901, the will was duly probated December 3rd, 1901, and defendant John B. Egger qualified as sole executor December 9, 1901. On January 9, 1902, the executor presented to her and requested her to sign and deliver to him, which she did, a paper writing wherein she declared that she did thereby accept the provisions made for her in her deceased husband's will. The executor had already paid her $75 for the preceding month and after the signing of that paper he paid her $75 a month for the period up to and including October, 1902, aggregating $825. In addition to the monthly payments the executor also paid her the $400 allowed her by section 107, Revised Statutes 1899.

To secure the payments to the widow of this $75 a month, the executor as directed by the will set apart $20,000 in mortgage notes, the interest from which was to be applied to this purpose as long as she lived, and after her death to be distributed to the legatees under the will.

At the same time she signed the last above mentioned document she, at the request of the executor, signed and acknowledged a deed conveying the one hundred and sixty acres of the Barton county land to consummate a sale of the same negotiated by the executor, for which he received $6400, which went into the estate, and of which he paid her $1430 as the amount of her money with which her husband had bought the land.

The defendant, the executor, in his answer pleads

two contracts alleged to have been made between the plaintiff and her husband; the one is the contract of date February 21st, 1898, under which it is claimed the will was made, and the other relates to the $290 she had in hand and the $1000 she was expecting at the time of the marriage, and, according to the averments in the answer, these sums were to be turned over to her husband to be by him or by his estate repaid to her. The answer does not state definitely whether that contract was made before or after the marriage nor does it say whether it was in writing or not. The language of the answer on this point is: "That before and at the time of and after said marriage . . . they entered into, made and had two several contracts," etc. Since both contracts were referred to in that same sentence and one we know was made in 1898, long after the marriage, we infer the other was made before the marriage. But that is not very important, because the plaintiff's testimony shows that such was the agreement, and whether made at a time and in a form to make it binding on the husband it was substantially performed on his part; he paid her interest on the amount and the same was remitted to her two daughters in Wisconsin until he invested the principal in the one hundred and sixty acres of Barton County land and took the deed in her name.

Within twelve months after the probate of the will the plaintiff duly filed in the probate court her renunciation thereof and claimed her dower and homestead in the land and her distributive share of the personal property. It seems that she filed two renunciations, one in September and the other in November. The reason for filing the second renunciation, we infer, was because after filing the first one she received in October another installment of her $75 monthly allowance.

In this application which she now makes for a distribution and her share of the personal property filed

in the probate court, the plaintiff states that in March, 1903, she filed a suit in the circuit court of Barton county against all the children, heirs, legatees and devisees of Fredolin Egger, setting forth in her petition substantially the facts as stated above and praying to have her dower in the real estate admeasured and set apart to her; that the defendants in that suit answered setting up as defense the contract of February 21st, 1898, and the execution of the instrument of writing on January 9, 1902, hereinabove mentioned, whereby she consented to accept the provisions of the will, and the payments to her of the several sums of money. The pleadings in this case show that the issues in that suit were substantially the same as they are in this suit except that that was a suit for dower in the land and that John B. Egger, who, in his capacity as executor, is a defendant here, was one of the defendants there, not as executor but as one of the heirs and devisees. That suit resulted in a judgment in favor of the widow and an admeasurement of her dower, from which judgment the defendants in that case appealed, but failed to perfect their appeal in time and on motion of respondent the judgment was affirmed. The widow now pleads the judgment in that case as an adjudication of the issues in this cause.

In addition to the above facts, and probably intended to bear on the question of estoppel, there was evidence on the part of the defendant tending to show that before signing the contract of February 21st, 1898, the same was read, translated and explained to her, that she said at the time it was what she wanted and that it was made at her request. There was also testimony tending to show that she knew that her husband owned a large estate, that when she signed the deed and the instrument of January 9, 1902, saying that she was satisfied to take what the will gave her, she was informed by a German lawyer in Kansas City that she had a right to claim more. Defendants offered to prove

by the husband of one of the defendants that after the death of her husband the plaintiff said to the witness that at the time of the marriage it was definitely understood between her and her husband that whatever property she had was to be returned to her children and whatever property he had was to be divided among his children, "that that was the arrangement before marriage and after marriage up to the time of his death." On objection of plaintiff the testimony was excluded on the ground that the witness was incompetent and exception was saved.

On the part of the plaintiff there was evidence tending to show that she was seventy years old when she signed the contract of 1898, was over seventy-three when she signed the deed and the paper of January 9, 1902, that she had no understanding of the English language, spoke only German; she had almost no companions after she came to Missouri except her husband and his children, her own children living then in Wisconsin; she had always been a kind and dutiful wife and a good mother to her husband's children; that she and her husband lived in frugality, she doing all the cooking and housework, and that whilst she knew he was worth considerable property she had no idea of its value, and although she had been told by the German lawyer in Kansas City and also by a son-in-law of hers two months after the death of her husband that she was entitled to more of the estate than the will gave her, yet she did not understand what her rights were in the estate until a short while before she executed the renunciation of the will, when she was on a visit to her daughters in Wisconsin when a German lawyer there explained it to her.

I. The point is presented by appellants that there was no affidavit for appeal from the judgment of the probate court as required by section 280, Revised

Statutes 1899, and therefore the circuit court acquired no jurisdiction of the cause.

The record shows that there was an affidavit filed, but appellants contend that it was not such an affidavit as the statute requires. The statute is in these words: "Sec. 280. The applicant for such appeal, his agent or attorney, shall file an affidavit that the appeal is not taken for the purpose of vexation or delay, but because the affiant believes that the appellant is aggrieved by the decision of the court."

The affidavit, after the caption giving the style of the case, is in these words:

"B. G. Thurman, for and in behalf of the plaintiff, Katharina Egger, being duly sworn, upon his oath says that this application for an appeal is not made for vexation or delay, but because he believes the appellant to be injured by the judgment of the probate court. This appeal is taken from the judgment on the merits.

"B. G. Thurman,

"Appellant.

"Sworn to and subscribed before me this 15th day of August, 1905. Paul Tucker,

"Judge of Probate."

The criticism of this affidavit in appellant's brief is as follows: "It is not pretended in the affidavit filed that plaintiff appealed, or sought to appeal. One B. G. Thurman, who was not a party to the cause, makes oath that he believes that *he was injured* by the judgment, designates himself as appellant, does not state that he is attorney or agent for plaintiff and does not state that he as appellant, was or is aggrieved, or that the plaintiff was or is aggrieved as required by section 280, Revised Statutes 1899."

It is true the affidavit is signed, "B. G. Thurman, Appellant," and to that extent it justifies the criticism, but in the body of the affidavit it is stated that the affiant "for and in behalf of the plaintiff Katharina

Egger'' makes the sworn statement; that shows that he was at least assuming to act as agent or attorney for the plaintiff in whose behalf the appeal was prayed. If we were disposed to be hypercritical we might say that an entire stranger might volunteer without any authority, and say that ''for and on behalf of the plaintiff'' he makes the sworn statement and yet fall short of saying that he is in fact the agent of the person in whose behalf he volunteers; there is a shade of difference between the two statements, one that he appears ''for and on behalf of the plaintiff'' and the other that he is the agent or attorney of the plaintiff, but the difference is not at once obvious. In this case, however, there is sufficient in the record outside of the affidavit itself to supply the information if it were needed. The record of the probate court shows that the plaintiff's application or motion for a distribution filed in that court and on which this whole litigation is founded was signed by Thurman, Wray and Timmons as attorneys for the plaintiff, and in the circuit court the bill of exceptions shows that the trial was conducted on the side of the plaintiff chiefly by a Mr. Thurman. The record in neither court shows that it was a Mr. B. G. Thurman, but since the records of the probate court do show that that court accepted the affidavit signed B. G. Thurman as representing the plaintiff and on it made the order granting the appeal we must presume that that court was satisfied as to the identity of the Thurman, who was of the law firm that signed the plaintiff's application or motion, with the Thurman who signed the affidavit.

Besides if the defendants had thought that there was anything wrong with the affidavit they had the right to move the circuit court to dismiss the appeal for want of a proper affidavit, and that court would have sustained the motion if it had considered the affidavit insufficient and if the plaintiff had not, as she would have then had the right to do, filed a sufficient

affidavit. Section 283 in such case provides: "but no appeal shall be dismissed in the appellate court for failure to file affidavit or bond, or because of a defective affidavit or bond, provided the appellant shall file the affidavit and bond to the satisfaction of the court in which the appeal may be pending." Since the defendants failed to call the attention of the circuit court to the defect, if there was a defect, when it could have been corrected or obviated, it is too late to make objection now.

II. We turn now to the main question in the case, is the plaintiff by the contract of February 21, 1898, precluded from the share in her late husband's estate to which she would otherwise have been entitled under the statutes of this State?

*a.* Appellants contend that under section 4335, Revised Statutes 1899; Ann. Stat. 1906, p. 2378, all distinctions theretofore recognized by the law concerning a married woman, in relation to her property rights and her contracts, were abolished, and decisions of this court are quoted to sustain that contention. Doubtless that statute has to a great degree removed from the wife the shield that the common law, under the wisdom and experience of ages, had placed over her for her protection, and has exposed her to dangers which she had not been accustomed to learn to guard against in former times when she was taught by the law to regard her office of wife and mother as of first importance. But courts have nothing to do with the policy that has caused legislation; they must take a statute as the lawmakers gave it and enforce it to the full extent of its purpose. It does not impugn a statute, when the validity of a contract claimed to have been made under it is in question, if the court should take into consideration the relation of the parties to each other and the circumstances influencing their conduct. When we speak of fiduciary relations as influencing the making of con-

tracts we usually cite for example, attorney and client, guardian and ward, physician and patient, shepherd and flock, and if we do not find in that list husband and wife it is because the ability of husband and wife to enter into contracts with each other as adversary parties has come into our law since the books on that subject were written, but the reason for the law taking the fiduciary relation into account in such questions applies with as strong force in reference to husband and wife as it does to any other relation. Take, for example, this case: Here is a contract which, it is alleged, an old wife, seventy years of age, made with her husband with whom she had lived in perfect harmony the best part of her life; from young womanhood to old age she had been his devoted wife and had reared with a mother's care these defendants, his children, her step-children; she could speak no word of the language of the country in which she lived and for that reason her companionship and association were confined almost exclusively to that family circle; her own children she had left in Wisconsin when she came with her husband and his children to Missouri. It is but fair to presume that the husband was a man of intelligence and good business methods, because, coming as he did to this country with comparatively small means, and, as we gathered from the oral argument, even assisted to come by the Swiss government, he accumulated a fortune amounting to $300,000; his children at the time of the execution of this contract having married and gone to their own homes, the old couple were left alone, and he was almost her only companion. The contract she signed was written in English of which she could read no word, and not only was it written in English but it shows on its face that it was a work of skill; it contained recitals not essential to the contract, but important if designed to make it appear that it was done at her request and earnest desire. Sometimes great caution to give the appearance of fairness itself arouses

suspicion. If at that time doubt was felt as to the validity of the instrument and there was anxiety to clinch it, its form and the industry shown in the execution of it to guard every point could not have been more skillfully designed. One of the subscribing witnesses testified that he read the contract to Mrs. Egger, translating it into German, and asked her if she understood it and was satisfied and she said yes. Under the circumstances of this case why should not the law of fiduciary relations be taken into account when we come to pass judgment on this contract?

The statute on which defendants rely, section 4335, declares that "a married woman shall be deemed a *femme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued," etc. And this court has held that under the terms of that statute she may make a valid legal contract with her husband. [Rice, Stix & Co. v. Sally, 176 Mo. 107; O'Day v. Meadows, 194 Mo. 588; Donovan v. Griffith, 215 Mo. 149.] But neither that statute nor those decisions sustain this contract. In the Rice-Stix case this court held that a contract by which the husband conveyed to his wife certain notes and a chattel mortgage in payment of a debt he owed her was valid and the wife could interplead to recover the same in an attachment suit instituted against the husband by his creditors. In the O'Day case the contract was for a division of the husband's property between him and his wife whereby she took *in praesenti* a large share of his estate. In the Donovan case the heirs of the wife were seeking to charge the husband with rents which arose from her property during coverture on an implied contract, but the court held that although under the statute husband and wife could make a valid contract with each other, yet the circumstances of that case did not raise a contract by implication. That is the extent to which those cases go in the direction of appellant's contention.

The statute itself strikes only at some of the wife's common law disabilities, it does not rob her of any of her statutory rights. She is deemed a *femme sole* for certain purposes, but she is a wife for all else. Her coverture protects her from the effect of the Statute of Limitations, her husband cannot disclose her confidential communications, her oral agreement with her husband to allow him to reduce to his possession her personal property or choses in action, which by the Married Woman's Act of 1875 (Sec. 4340, R. S. 1899) becomes her separate property, is invalid (Hurt v. Cook, 151 Mo. 416), and so also is her right of election under section 2951, Revised Statutes 1899, Ann. Stat. 1906, p. 1707, still her right. The statutory provisions above referred to (there are doubtless others that could be referred to) are cited only to illustrate that the Act of 1889 (Sec. 4335, R. S. 1899) did not repeal any of the statutes then existing in behalf of the wife.

Counsel on both sides agree that the contract in question did not create a jointure either legal or equitable, for the reason that it did not convey any estate real or personal to the wife to take effect either then or on the death of the husband. And counsel for appellants base an ingenious argument on that fact to show that there was no right of election given by the statute to the widow under the circumstances, and in pursuing that argument they array sections 2939, 2940, 2941, 2944, 2948 and 2949, and show that none of them fits the facts of this case, and in that they are correct. But if we follow the learned argument and take into account also section 2937, which gives the widow absolutely a child's share of the personal estate, it leads to the conclusion that under that section no election is necessary and she may simply ignore the will and demand what the law gives her. That section does not say, as others do, that she must formally renounce the will before she can claim the share of the personalty there given her, but it says it is hers absolutely. But even if for-

mal election and renunciation were necessary, Spratt
v. Lawson, 176 Mo. 175, is authority for saying that
the plaintiff here made her election and renunciation
in due time.  In that case the husband made a will be-
queathing to his wife $7000 in lieu of dower, and she
signified her acceptance of its provisions, in lieu of
dower and all other claims, by her writing on the back
of the will duly signed by her, and after the death of her
husband she received from the executor $1000 as part
of her $7000 legacy; afterwards within a year she
filed a renunciation of the will in due form and de-
manded her dower.  This court held that since $7000
was less than her share of the personal estate alone the
writing if viewed as a contract was without considera-
tion and if viewed as an acceptance, the court said if
she had made formal acceptance every day in the year
previous to the last she had the right on the last day
to file her renouncement and take her dower.

Where the law gives a widow absolutely a certain
share in her husband's estate at his death, he cannot
deprive her of it by his will, and if in such case the law
does not say that she must make within a certain time
a formal renouncement of the will she need not
do so but may simply ignore it and claim what the law
gives her.  There are certain sections of the statute
relating to the widow's share in her deceased hus-
band's estate, as pointed out in the brief of appellants,
that put on her the duty of election, but section 2937,
under which this widow is now claiming a share equal
to a child's share, is not one of them; the law gives her
that share absolutely and unless she has bargained it
away or is estopped to assert it she is entitled to it
now.

The contentions of appellants are that by her con-
tract of February 21, 1906, she did bargain away that
right and that by her acts since the death of her hus-
band she is estopped from asserting the contrary.

The Married Woman's Act of 1889, now section

4335, Revised Statutes 1899, says that a married wo-
man for the purposes therein mentioned is to be deemed
a *femme sole* so far as to enable her to make contracts,
and we have held in the cases above cited that she was
thereby empowered to make contracts with her hus-
band the same as a *femme sole* could do. The lawmaker
certainly meant to say that a married woman could
make any contract that a *femme sole* could make, but it
is not so clear that the Legislature meant to say that
she could make a contract with reference to a subject
that a *femme sole* could have no control of, that is, a
wife's prospective distributive share of her husband's
estate. A *femme sole* in contemplation of marriage
might make an ante-nuptial contract on that subject,
but she would then be in fact a *femme sole,* not a mar-
ried woman acting *quasi femme sole* under authority
of our Married Woman's Statute. A good deal might
be said on both sides of that question and it is yet an
open one.

But assuming, without deciding, that under section
4335 a married woman could make a contract disposing
of what the law gives her in section 2937, such contract
would have to be supported by a valuable consideration.
What was the consideration that passed to the wife for
this contract? It starts out with the recital that she
has a great desire to be freed from embarrassment or
cares of business when her husband dies, therefore she
has "requested, induced and agreed" with her husband
that he shall make this provision for her in his will,
which provision is that the executor and trustee shall
set apart mortgage notes to the amount of $20,000, out
of the interest arising from which he is to pay her $75
a month during her life, the principal to be distributed
to the residuary legatees at her death; then the con-
tract goes on to say in effect that, as she is so anxious
for it, he agrees to do that, and in consideration of his
promise to do so she releases all claims of every kind
to his estate, specifying dower, homestead and "all

claims, rights, interests or demands'' existing then or to arise thereafter at his death. At that time the husband owned real estate to the value of $100,000 and personal property approximating $200,000, at least that is what the estate was estimated to be worth at his death, which occurred three or four years afterwards, and there is nothing in the record to suggest that there had been any particular increase between the date of the contract and the death of the husband. Of course there was a possibility of unforeseen disaster coming before his death to sweep away so much of the personal estate that her share would be less than the value of $75 a month, but one would be straining far to find in that a moving cause for the contract. Besides there was her dower right in $100,000 worth of real estate of which she could not be deprived either by her husband's act or his misfortune. And even the recitals in the contract itself exclude the idea that it was made to guard against possible disaster; according to the recitals it was not to save her from a reasonably expected loss but from the embarrassment and care that the possession of so much wealth would entail. There is some difference between counsel as to whether at that time she knew the extent of her husband's fortune. If she did not know, it was the duty of her husband to have informed her; if she did know, as counsel for appellant think, it is all the worse for the contract. If she knew at the death of her husband she would be entitled to dower in real estate of the value of $100,000 and one-sixth of personal property to the value of nearly $200,000, and that her husband could not by his will deprive her of it, and yet agreed that if he would make a will giving her $75 a month during her life she would take that in lieu of the large share of the estate which the law gave her, it was a mere *nudum pactum*. There was nothing given her at the time, there was only a promise to give her out of his estate by will at

his death something very much less than what would have been her own by right under the law.

If instead of a mere promise to make a will the contract had provided for the then transference to a trustee of mortgage notes to the amount of $20,000, to secure her the monthly sum of $75 for life to guard against possible vicissitudes of fortune, a different case would be presented, as to which we say nothing. Here we have a mere promise to make a will giving her less than she would be entitled to if there was no will.

Counsel for appellants suggest that we turn the case around and suppose there was no will and that at the death of the husband the promised provision for her in the contract exceeded the value of her dower and her statutory share in the estate, could the executor and heirs avoid the contract on the ground that it was not supported by a consideration? The contract is not binding on one unless it is binding on both. If there was no consideration to support the agreement to relinquish her dower and her other claims against the estate, that relinquishment is not binding on her and constituted no consideration to support the promise to make a will.

A mere promise by a debtor to a creditor to pay him a sum less than the amount of the debt when due is no consideration to support an agreement by the creditor to accept the smaller sum in full satisfaction of the debt.

The trial court found that there was no consideration to support the contract in question and our judgment is that that finding was correct.

b. We are also of the opinion that under the peculiar circumstances of this case there was a very strong fiduciary relation between the husband and the wife at the time this contract was entered into and even if we should adopt appellants' view that the possible diminution of the personal estate between the date of the contract and the death of the husband formed an

appreciable consideration to support the contract, still the burden was on the defendant to show that the old wife was treated fairly and no advantage taken of her. That they have not shown; on the contrary it was an exceedingly unfair contract and the circumstances combine to show that she was imposed upon.

III. As to the plea of estoppel there is nothing to support it. The amounts that were paid her were but a very small per cent of what was due her. The document she was induced to sign, dated January 9, 1902, declaring that she elected to accept the provisions of the will in lieu of dower was without any consideration at all and it could not have misled the executor to his disadvantage. If he should now say that he would not have paid her the $75 a month except on the faith of that document he would put himself in the attitude of saying that he would not have paid her anything at all unless she had agreed to take a very small part of what was her own. The $400 he paid her was what under section 107, Revised Statutes 1899, the law gave her. She testified that she did not know what it was for. The $1430 he paid her was made up of the hereinabove mentioned $290 of her money which she put into the hands of her husband at the time of her marriage, and the $1000 she then had in expectancy and interest, which sums he had invested for her in the 160 acres of Barton county land. That land the executor sold for $6400 which went into the estate, and he obtained from her a deed to the same at the same time he paid her the $1430. There is no excuse for that unless it be that the executor himself was acting under a mistake as to the law. Those papers were prepared by the executor or by some one for him and presented to her when she was in Kansas City for signature. There was evidence to the effect that at the time they were presented a German lawyer was present and trans-

lated them to her and at the same time told her that she was entitled to more of the estate in the way of dower and distribution than what the will gave her. Whether he explained to her that the one hundred and sixty acres of land was her own property and that she was under no obligation to sign the deed, or to take one-fourth of the proceeds of a sale which the executor would make, does not appear. But it does appear that that was the executor's lawyer and a stranger to her, and there was no one present to advise her but the executor and his lawyer. Appellants in their brief resent the idea that the plaintiff was under the influence of the executor and they deny that the evidence sustains the statement in the respondent's brief that he was her favorite and that she trusted him. Sometimes "acts speak louder than words," and the acts of the executor and the plaintiff in their transactions with each other in this matter show more strongly the influence he exerted over her than if she had said in so many words that she loved him as a son whom she had reared from childhood and trusted him. It was while she was with him that she signed the document of January 9, 1902, and the quitclaim deed to the one hundred and sixty acres of land, and she continued to accept, while she was with him, the $75 a month, even though, as he now contends in his brief, her own son-in-law had told her that she was entitled to more. But when she had gone beyond his reach, when she was with her own children in Wisconsin, where under the advice of a German lawyer there, who was not in the employ of the executor, her understanding was enlightened, then she lost no time in bringing this suit.

In her deposition, when she was asked about the deed she had given to the one hundred and sixty acres of land, she said that when she gave the money to her husband, the understanding between them was that it was to be repaid to her by him or his estate, and when

she signed the deed and accepted the $1,430, she understood that that was all she was entitled to, and that was still her understanding when she was testifying. Appellants' refer to that statement of hers as going to show that she understood everything and was satisfied. That is one way to look at it, but from another point of view it shows that she was ignorant of the law and that she was a subject of easy imposition. Although there may have been an oral agreement between her and her husband as she stated, yet when he invested the money in land, and took that deed in her name, it became her land and she could not have been compelled to convey it as she did, but she thought even when she was testifying that she was entitled only to the money she had given her husband. The circumstance shows that she was badly in need of someone to advise her. Considering her evident ignorance of law and the circumstances under which she acted when she signed those papers in Kansas City, it little becomes the executor now to talk about having been misled by her conduct, and about her being estopped to claim what the law gives her.

IV. As what is above said disposes of this case, it is perhaps unnecessary for us to say anything on the question of *res judicata* which the plaintiff raises in her pleading and in her brief, but, since a point is made of it and since there is a learned discussion on the point in the briefs on both sides, we will say a few words.

The other suit was for the admeasurement of dower; there were the same plaintiff and the same defendants as in this suit except that in that suit John B. Egger was a party defendant as heir to his father but was not a party in his official character as executor, whereas here he is a party as executor and not as heir. The issues of fact were precisely the same in both cases, but the subject-matters of the two suits are

not the same, the one being for dower in land, this for a distribution of the personal property, and there is this difference to be observed in the application of the evidence in the several cases to-wit: the wife's inchoate right of dower attaches immediately on her marriage to land owned by her husband at that time, and to land acquired by him during coverture as soon as he acquires it, and she cannot be deprived of that right by any act done or suffered by him, whereas her title to the share in the personal estate attaches only at his death, but does immediately attach then and if she should die before the administration is concluded her share goes to her administrator. [Hayden v. Hayden, 23 Mo. 398.] The husband could not dispose of his real estate so as to reduce the wife's dower but he could dispose of his personal property or it could be sold under execution and the wife would have to take a share of what was left at his death. Therefore in the suit for dower the question of whether or not there was any consideration to support the contract of February 21st, 1898, would exclude the idea of a consideration to be found in the possible diminution of the personal property which learned counsel have earnestly pressed on our attention in this case. We do not think the judgment in the dower case is *res judicata* in this case.

V. Defendants offered to prove by a witness, Tschudy, the husband of one of the defendants, that at the death of the testator the plaintiff had said that it was the understanding between her and her husband before marriage and after marriage that her property was to be returned to her children and his property was to be divided between his children and that was the understanding up to the time of his death. The testimony was excluded upon objections of plaintiff; the ground that the court excluded it on was that the witness was incompetent. It is immaterial on what

ground the court excluded the evidence, if it was incompetent on any ground the exclusion was right. The evidence was incompetent for several reasons: The only contract in dispute was the written contract of February 21, 1898, and whatever oral agreement or understanding existed before with reference to that subject was merged into that contract, and nothing could be added to or taken from it by this oral testimony. If there was such an agreement it was made in Wisconsin before or at the time of the marriage where our Married Woman's statute had no influence and even long before our statute was passed. Whether such an oral contract before or after marriage would be valid under the laws of Wisconsin there was no evidence offered to show. Besides there was no such contract pleaded in the answer. The answer pleads that: "Before and at the time of and after" the marriage there were two contracts, one that the money which the wife had in hand at that time and that which she had in expectancy was to be "turned over to the husband and to be repaid by him or his estate," and the written contract for $75 a month which we have already discussed, but there is nothing said in the answer about an agreement that his property should go to his children. It appears in the record also that the testimony of this witness on the point that counsel stated he expected to prove was read in evidence from the bill of exceptions in the dower case, and counsel for appellants in their brief treat the point as a fact proven. In point of fact it is immaterial. The court did not err in sustaining the objection.

VI. The trial court made a finding of facts which is set out in the record, and some of the facts so found appellants invoke as conclusive on respondent because the record does not show that she excepted to them. Since the judgment was wholly in her favor she could

not appeal from it or file any bill of exceptions. [Patterson v. Patterson, 200 Mo. 335, l. c. 342.]

We find no error in the record. Judgment is affirmed. *Lamm, P. J.,* and *Graves, J.,* concur. *Woodson, J.,* concurs in paragraphs I, III and V, and in all that is said in paragraph II except that part of it which holds that the contract is without consideration —to that part he dissents. He also dissents as to paragraph IV, and concurs in the result.