IN THE MATTER OF THE ESTATE OF WILLIAM
F. GOESSLING, deceased: ARTHUR C. GOES-
SLING, ELEANORA F. PETERS and EVELYN
V. GOESSLING (Children of Testator), Appellants,
v. WILHELMINA M. GOESSLING (Widow of
Testator).

In Banc, April 30, 1921.

1. **WILLS: Widow: Renunciation: Election.**  Testator's estate was
worth about $200,000, of which $160,000 was personal property and
$40,000 was real estate.  His homestead was worth about $14,000.
His three children by a former marriage and his widow survived
him.  By his will he gave his widow the use of his homestead and
$200 per month to be paid to her each month out of his estate
during her life or widowhood and also all his household effects.
He also left an annuity to his mother and then gave the rest of
his estate to his three children equally, and appointed his wife
and son executors of his will without bond.  The executors pre-
sented the will for probate and made formal application for let-
ters testamentary, which were granted and they qualified.  They
filed an inventory and made settlements of the estate in the probate
court.  These papers were prepared and signed by the son, but were
also signed by the widow, at his direction.  He employed attorneys
to advise and assist him in the administration, the widow leaving
the whole matter to him and taking no part therein.  He paid her
the monthly allowance provided by the will for eleven months.
taking receipts therefor reciting that the payments were under the
will.  Neither the son nor the attorneys informed her that she
had the right to renounce the will and she was ignorant of the
law.  Nearly a year after her husband's death she first learned of
her right to renounce the will and at once executed and filed her
renunciation to take under the will.  She and testator's infant
daughter, of whom the will appointed her guardian, continued to
reside in the homestead where they were living when the cause
was tried in the circuit court.  After her renunciation was filed the
monthly allowance was paid to her for a year and she receipted

for these payments as being "on account of her share of the income of said estate." She also received household goods appraised at $445. 'In addition to the payments to the widow, no part of the personalty was distributed except the payments to testator's mother and an allowance to the daughter made under order of the probate court. The entire personal estate, less the above mentioned payment, was in the hands of the executors. There was no evidence that either of the children had acted upon or been prejudiced by the fact that the widow had received the monthly payments. *Held*, (1) That the widow had the right to occupy the homestead rent free until her dower was assigned and her occupancy was passive and no more indicative of claim under the will than under the right of quarantine; (2) That she was entitled absolutely without election on her part, to a child's share of the personal estate, in this case one-fourth or approximately $40,000; (3) That all of her acts having been done in ignorance of her legal rights and she having renounced the will within the time and in the manner required by the statutes, and the other parties interested in the estate not having been prejudiced by what she had done, she was not estopped to renounce the will and was not to be held as having elected to take under it. [GRAVES, ELDER and J. T. BLAIR, JJ., dissenting.]

2. ———: ———: ———: **Bequest of Personality.** A bequest of personalty to a widow does not bar her dower in real estate; yet, if the bequest be in lieu of dower, she cannot accept the bequest and also her dower, but is put to her election.

3. ———: ———: ———: **Stare Decisis.** The question raised by the appeal in this case has been settled by repeated decisions of the Supreme Court, which have now become a rule of property, the adherence to which is indispensable to the due administration of justice.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

AFFIRMED.

*Elliott W. Major, Charles G. Revelle* and *Lambert E. Walther* for appellants.

(1) The acts of the widow under the will, such acts being inconsistent with any other theory. Moseley v. Bogy, 272 Mo. 319; Davidson v. Davis, 86 Mo. 440; Mendenhall v. Mendenhall, 53 N. C. 287; Allen v. Allen, 121 N. C. 328; Treadway v. Payne, 127 N. C. 436; State

ex rel. v. Holtkamp, 185 S. W. 204, 205; Syme v. Badger, 92 N. C. 706; Wood v. Trust Co., 265 Mo. 511; Stoepler v. Silberberg, 220 Mo. 271; Casles v. Gray, 159 Mo. 595; Young v. Boardman, 79 Mo. 186; Stone v. Cook, 179 Mo. 537; Fox v. Wendles, 127 Mo. 511; Brant's Will, 40 Mo. 276, 64 L. R. A. 287. (2) When one is put to an election between two inconsistent courses and first adopts one by some act inconsistent with the other, such is an election which cannot afterwards be recalled. Stone v. Cook, 179 Mo. 534; Moseley v. Bogy, 272 Mo. 329; Ashlock v. Ashlock, 52 Iowa, 322; Mitchell v. Vest, 136 N. W. 1054. (3) Entirely without regard to the question of her election by acts her conduct in occupying the mansion which was of much greater value than her homestead rights and in accepting the bequest of $200 per month to which she was not entitled except under the will, and her various other acts which led others to believe that she had accepted the will estops her from renouncing and rejecting the same. Zook v. Welte, 156 Mo. App. 714; Lackland v. Stevenson, 54 Mo. 108; Hart v. Giles, 67 Mo. 175; Wood v. Trust Co., 265 Mo. 511; 1 Woerner's Am. Law of Adm. (2 Ed.) 500; Stone v. Cook, 179 Mo. 534. (4) The widow at all times had full knowledge of the value of the estate and of what the will gave her and, so knowing, performed the acts above recited. She at no time complained of the nature or extent of the provisions made for her by the will and indicated no dissatisfaction therewith until more than eleven months thereafter. She was a woman of intelligence and business qualifications. She knew that reputable attorneys had been employed to advise her and her co-executor upon all legal matters, and she had ready access to them as well as to the probate court and others from whom she could have received legal information. Her alleged lack of legal knowledge and information cannot operate to recall an election theretofore clearly made. Light v. Light, 21 Pa. St. 407; Woerner, Law of Admin. (2 Ed.) sec. 119, p. 269; Moseley v. Bogy,

272 Mo. 333; Underhill on Wills, sec. 731. (5) The statutory provisions that a testamentary gift by a husband to his wife of an interest in real estate shall be in lieu of dower unless otherwise declared by the will, and that in such case the widow shall not be endowed in any real estate of the husband unless she shall within the time and in the manner prescribed by the statute refuse to accept the provisions made for her by the will, have no application to the personal estate. Halbert v. Halbert, 19 Mo. 453; Pemberton v. Pemberton, 29 Mo. 408; Bryant v. Christian, 58 Mo. 103; Glenn v. Gunn, 88 Mo. App. 429. (6) By Sec. 349, R. S. 1909, when a husband dies leaving a child or children or other decendants, the widow is entitled absolutely to a share in the personal estate belonging to the husband at the time of his death, equal to the share of a child of such deceased husband. If the husband makes a different provision for his wife by will, she is put to her election, but there is no statute fixing the time or manner of signifying her election. Hayden's Admr. v. Hayden's Admr., 23 Mo. 398; Glenn v. Gunn, 88 Mo. App. 429. (7) Acceptance by the widow of the provisions of her husband's will in her favor will defeat her statutory or so-called dower right in the personalty when, as in this case, such provisions are inconsistent with her enjoyment of that right. Schwatken v. Daudt, 53 Mo. App. 1. (8) Acceptance of a part of the benefit under a will constitutes an acceptance of the whole will. Wood v. Trust Co., 265 Mo. 511; 40 Cyc. 1895; State ex rel. v. Holtcamp, 185 S. W. 204.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.* for respondent.

(1) Every widow is given by statute the right to renounce the provisions made for her by the will of her husband. R. S. 1909, sec. 361. (2) No act on the part of the widow, however solemn and formal, during the period within which she may renounce the provisions of the will, prevents her from renouncing the will, if she

so chooses. Bretz v. Matney, 60 Mo. 444; Register v. Hensley, 70 Mo. 189; Spratt v. Lawson, 176 Mo. 175; Eggers v. Eggers, 225 Mo. 116; Orchard v. Stove Co., 264 Mo. 554. (3) Causing her husband's will to be probated and acting as executrix thereunder does not deprive the widow of her right to renounce the provisions made in the will for her. Simonton v. Houston, 78 N. C. 408; In re Gwin, 77 Cal. 314; In re Smith, 108 Cal. 121; In re Frey, 62 Cal. 661; Tyler v. Wheeler, 160 Mass. 206; Reeves v. Garrett, 34 Ala. 558; Benedict v. Wilsmarth, 46 Fla. 536; In re Estate of Proctor, 103 Iowa, 232; Milner v. Davis, 120 Iowa, 231; Williamson v. Boul, 184 N. Y. 605; Pace v. Pace, 271 Ill. 114; Whitridge v. Parkhurst, 20 Md. 62; Taylor v. Brown, 2 Leigh (Va.) 419; Cameron v. Cameron, Ohio Probate, 157. (4) The occupation by the widow of the homestead cannot be regarded as an acceptance of the provisions of her husband's will because the statute secures to her the right to occupy the same until her dower is assigned or she elects to take a child's part of the estate. R. S. 1909, sec. 366; Roberts v. Nelson, 86 Mo. 21; Wigley v. Beauchamp, 51 Mo. 544; Keene v. McVoy, 206 Mo. 42. (5) No election made by the widow is binding on her unless made with full knowledge of the circumstances and of her rights and with the intention of making an election. Payton v. Bowen, 14 R. I. 375; Milliken v. Milliken, 37 Ohio St. 460; Woodburn's Estate, 138 Pa. St. 606; Gam v. Gam, 135 Ind. 687; Hill v. Hill, 88 Ga. 612; Stone v. Vandermark, 146 Ill. 312; Yorkey v. Stinson, 97 N. C. 230; Wagner v. Wagner, 111 Va. 326; Owens v. Andrews, 17 N. M. 597, 49 L. R. A. (N. S.) 1072; Watson v. Watson, 128 Mass. 152; 1 Woerner on Admin. (2 Ed.) sec. 119. (6) The property received by the widow under the provisions of the will being much less than that she would have the right to take under the law without reference to the will, the doctrine of election has no application to the facts in the case at bar. Burgess v. Bowles, 99 Mo. 548; Ball v. Ball, 165 Mo. 327. (7) The acts of the widow to the time of filing her renunciation of the provisions of

the will for her constitute no estoppel, because: first, she acted in ignorance of her legal right to renounce the provisions of the will, and second, no one interested in the estate of the deceased has acted on her conduct to his detriment. Garesche v. Inv. Co., 146 Mo. 451; Herman on Estoppel, sec. 1062; Spratt v. Lawson, 176 Mo. 179; Egger v. Egger, 225 Mo. 145.

HIGBEE, J.—William F. Goessling died October 1, 1912, testate, leaving an estate of the value of about $200,000, of which $160,000 was personal property and $40,000 real estate. His homestead was worth about $14,000. He left surviving him three children by a former marriage, the appellants, and his widow, the respondent, who was forty-five years of age. By the first clause of his will, executed September 23, 1912, he directed that his debts be paid and that his executors take charge of all his property. The other provisions of the will are as follows:

Statement.

"Second. I will and direct to my dear wife, Wilhelmina M. Goessling, the use of the homestead, No. 2932 University Street, St. Louis, Missouri, and the sum of two hundred (200) dollars to be paid to her each month, out of my estate, during her life or so long as she may remain my widow. I also give and bequeath to her all of my household effects of whatever nature or kind.

"Third. I will and direct to my mother, Mrs. William Goessling, the sum of fifty (50) dollars, to be paid to her each month out of my estate.

"Fourth. I devise and bequeath to my three children, namely, Eleanora F. Peters, wife of Frank E. Peters, and Arthur C. Goessling, and Evelyn V. Goessling, all the rest and residue of my estate of any nature or kind, to be divided share and share alike.

"Fifth. I hereby request and appoint my dear wife, Wilhelmina M. Goessling, to act as guardian for my daughter, Evelyn V. Goessling, until she become of age.

"Sixth. I hereby appoint Frederick W. Goessling and Wilhelmina M. Goessling, my wife, as executors of this,

my last will, requesting that they be permitted to act without giving any bond.''

On October 10, 1912, Frederick W. Goessling and the widow presented the will for probate and made formal application for letters testamentary. Letters were granted and the executor and executrix qualified without bond.

A supplemental final settlement was filed June 17, 1915, showing a net balance of $158,733.42, which was approved.

On the same day the three children of the testator filed a petition in the probate court praying an order of distribution in accordance with the terms of the will. This petition recites that the testator by the will gave to his widow $200 per month and the use of the homestead property during her life or widowhood, also all the household property, and that there be paid to the testator's mother $50 per month during her life; that the remainder of the estate was devised to his three children in equal shares. It further recites that the monthly payments to the widow of $200 were made to and including October, 1914; that the widow duly qualified as executrix of the estate and with her coexecutor filed an inventory of the estate, and the semi-annual and final settlements; that she occupied the homestead which is of the value of $13,000; that she has retained goods and chattels and the household furniture of the testator of the appraised value of $975, and that by her acts aforesaid she elected to take under the will and did waive and estop herself from renouncing the will and the attempted renunciation of said will, filed by her September 25, 1913, is of no effect. Wherefore they pray that the remainder of said estate be distributed in equal parts to the petitioners, subject to the charge thereon of paying to the widow $200 per month during life or widowhood, and $50 per month to the mother of testator during life. On December 6, 1915, the probate court made an order that the executors pay to the widow $2800 in payment of the monthly allowance of $200 per month, under paragraph 2 of the will, for the months of October 1, 1914, to De-

cember 1, 1915, inclusive; $50 per month to the mother of the testator for such period as she may not have been paid, and that the remainder of said property be turned over to the children of the testator as prayed, subject to the lien and charge as aforesaid.

From this order an appeal was taken to the circuit court where, on April 16, 1917, the judgment of the probate court was reversed and the cause remanded. An appeal was taken from this judgment. From the evidence it appears that Frederick W. Goessling was a man of affairs. He prepared and signed the inventory. Mrs. Goessling also signed it, by his direction. He personally attended to the administration of the estate, paid the widow her monthly allowance of $200 for eleven months, taking receipts therefor reciting that the payments were under clause two of the will. He prepared the settlements which she also signed by his direction. He employed attorneys to advise and assist him in the administration. Mrs. Goessling took no part in this but left the administration of the estate wholly to the coexecutor. Neither he nor the attorneys informed Mrs. Goessling that she had the right to renounce the will. She was ignorant of the law. In September, 1913, she first learned that she had that right, and at once executed her renunciation to take under the will which was filed September 25, 1913. She and the infant daughter of the testator, who was sixteen at her father's death, continued to reside in the homestead where they were living at the time this cause was tried in the circuit court.

No part of the personalty of the deceased has been distributed except the payments of $50 per month to the testator's mother, $75 to his daughter Evelyn for her support and maintenance under the order of the probate court, and eleven payments of $200 to the widow, receipted by her as being paid under the provisions of clause two of the will. She also receipted for payments of $200 per month from October 1, 1913, to September 1, 1914, inclusive, same "being payment to the undersigned on account of her share of the income of said estate." She also

received the household goods appraised at $445. These are the conceded, undisputed facts. There is no evidence that either of the children have acted upon the fact that the widow received the monthly payments of $200 or have been prejudiced thereby. The entire personal estate, less the payments above mentioned, is in the hands of the executors.

I. The statute gives the widow of the testator, without election on her part, a homestead of the value of $3000. Under Section 334, Revised Statutes 1919, she is entitled to occupy the entire premises until dower is assigned "without being liable to pay any rent for same." [Ball v. Ball, 165 Mo. 312.] Under Section 319, Revised Statutes 1919, she is also entitled absolutely, without election on her part, to a child's part of the personal estate. Her share of the personal estate would be one-fourth, or approximately $40,000. In addition to this she is entitled to the household and kitchen furniture not to exceed $500 at its appraised value. [Section 105, R. S. 1919.]

Wills:
Widow:
Statutory
Rights.

By Section 328, Revised Statutes 1919, "if any testator shall, by will, pass any real estate to his wife, such devise shall be in lieu of dower . . . unless the testator, by his will, otherwise declared." By Section 329, Revised Statutes 1919, it is provided, "that in such case the wife shall not be endowed in any of the real estate whereof her husband died seized unless she shall by writing duly executed and acknowledged . . . and filed in the office in which the will is probated and recorded within twelve months after the proof of the will, not accept the provisions of said will."

II. It is contended by the appellants that the occupation of the homestead by the widow was an election to accept the provisions of the will for the reason that the homestead was of the value of $14,000 and largely in excess of the value she was entitled to take under the statute on homesteads. [Sec. 5857, R. S. 1919.] Her occupancy was passive; no more indicative of a claim under the will

**Occupying Homestead: Election.** than under her right of quarantine. Under the will she is vested with an estate for life in the homestead, subject only to be defeated by her remarriage. It must therefore be clear that the will passed an interest in real estate to the widow of the testator.

It is also contended that by proving the will, making application for letters testamentary and by receiving the payments of the monthly allowances, the widow definitely elected to take under the will and waived her right of renunciation. These questions may be considered together.

III. In support of their contentions, appellants' counsel rely on the following adjudications:

In Moseley v. Bogy, 272 Mo. 319, the wife of Bernard P. Bogy devised her real and personal estate, one-half to her husband and one-half to her two children. He probated the will and qualified as executor. The plaintiff, a daughter of the testatrix, sued her father in ejectment for **Election.** an undivided one-fourth part of the property devised by the will. In his answer the defendant claimed possession by virtue of his curtesy. He also claimed an undivided half under the will. (l. c. 329.) He had a choice between two alternatives. Entitled to one or the other, he claimed both. We quote from page 331:

"He had full knowledge of his rights. He knew what the law would give him independent of the will. Having that knowledge he deliberately chose to put the will into effect, declaring that he would execute its provisions; therefore he elected to take under it."

[Davidson v. Davis, 86 Mo. 440.] Charles Rossin died in 1874, having devised to his wife, Mahala, eighty acres in fee, a life estate in one hundred acres and all his personal property. To others he devised other tracts of land. They had no children. His wife was appointed executrix. She probated the will, qualified as executrix and continued to reside on the premises in controversy. She took all the personal estate of her husband under his will, a provision greater than that allowed by law. She died within a year without having repudiated the will.

Plaintiffs endeavored to do this in her stead. "Conceding that the above recited acts would not have precluded her from withdrawing such acceptance and asserting her right to a homestead, if she had lived, yet her acceptance of the provisions of the will cannot be withdrawn by her heirs. It is not a right transmissible by descent." (444)

[Wood v. Trust Co., 265 Mo. 511.] Charles E. Wood resided in Washington, D. C. He died in February, 1908, without issue. By his will he gave to his wife $35,000 in cash and the income of $200,000 during her life. He also gave her in fee his residence property in Washington and all furniture, goods and chattels therein; also the rents of certain properties in Lebanon, Ohio, with power to dispose of them by will. The will was probated in the District of Columbia on May 28, 1908. On March 15, 1911, an authenticated copy of the will and of the probate thereof was filed and recorded in the probate court of Jasper County, Missouri, and in the recorder's office of that county. Plaintiff, the widow, never filed a renunciation of the will but accepted all of its provisions. On September 9, 1911, she filed her election in the probate court of Jasper County to take one-half of the real estate of her husband in this state. This action was to recover dower in real estate located at Joplin. Syllabus 1 reads:

"The statute of the District of Columbia and the statute of Missouri are substantially alike in providing that where property is devised by will to the wife it shall be in lieu of dower, and in declaring that unless she renounces the will within a stated time she shall be deemed to elect to take the property given her by the will and to surrender her statutory dower; and a widow, without children or other descendants, whose husband's will gave her certain real estate in Washington, D. C., and a designated amount of money, who did not renounce the will probated in that city, is not entitled to claim one-half or any other interest in his real estate in Missouri, although she filed with the proper probate court in this State her election not to take under the will, and the will did not expressly say the devise and bequests to her were to be in lieu of dower."

287 Mo.—43

In Stoepler v. Silberberg, 220 Mo. 258, Bernard Stoepler, who died in 1867, owned the property in controversy as his homestead. By his will he devised the homestead to his widow for life, with remainder to his three children, two of whom died without issue. The widow, who was named executrix, probated the will and took out letters testamentary. She died without having renounced the will, but accepted it and always asserted that she owned a life estate only. It exceeded by $1500 the value of the homestead she was entitled to receive. She also received the personal estate. Judge GANTT, at page 271, said:

"In this case the widow accepted the provisions of the will, qualified as executrix and on various occasions announced she only had a life estate in this lot. Her heirs could not now withdraw her acceptance. The right of election is not transmissible by descent. [Welch v. Anderson, 28 Mo. 1. c. 298; Davidson v. Davis, 86 Mo. 1. c. 444.]"

Stone v. Cook, 179 Mo. 534, was an action by one of the legatees, a daughter of the testator, to contest her father's will after she had received $7000 from the executors. The rule was stated by Judge MARSHALL, at page 546, as follows:

"The sum of the matter then is, that as a general rule one who has received a benefit under a deed, will, or other instrument cannot thereafter contest its validity, but the general rule is subject to this qualification, that if the benefit was received without a knowledge of his right to elect between the benefit so conferred and of his right to the property outside of the deed, will or instrument, or if he was induced by fraud or deception to accept the benefit conferred by the instrument, he may revoke the election and contest the validity of the instrument and claim under the law, provided that innocent third persons will not suffer by a revocation, and provided there has been no unreasonable delay in exercising the right of revocation, and provided he pay into court the benefits received."

It is apparent that the rulings in these cases afford no support to the appellants' contentions. Mrs. Goessling

was ignorant of her right to renounce the will. It is true she occupied the homestead but she had that right under the statute. She received eleven payments of the monthly installments, but under the statute one-fourth of the personal estate was her absolute property. No one has been injured or prejudiced by anything she did. That is an essential element of estoppel. She can be charged with all payments when distribution is made.  The statute, recognizes her ignorance of the law, although a *feme sole*, and allowed her one year in which to renounce the will. Every one dealing with her is presumed to have known she had that privilege and to have acted with reference to that contingency.

IV. We have not had our attention called to a case decided by this court in which, under similar circumstances, it is held that a widow was estopped to assert this statutory privilege. On the contrary, all the adjudications in this State uphold her right to renounce the will at any time within a year after probate. To deny this because a widow is a *feme sole* and *sui juris* would emasculate the statute. This is the general rule.
——: Estoppel. [40 Cyc. 1897, citing Stone v. Cook, supra.]

If a person, although knowing the facts, has acted in misapprehension of his legal rights and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed. [Watson v. Watson, 128 Mass. 152.] It is otherwise, however, where the position of other parties has materially changed. [Utermehle v. Norment, 197 U. S. 40.]

Watson v. Watson, 28 Mo. 300, is a leading case. On June 26, 1857, letters of administration were issued on the estate of Ringrose J. Watson. On September 18, 1857, Frances Watson, his widow, elected to take a child's part in lieu of dower. Prior to this the widow had sued to recover dower, one-third part of the land owned by her husband at his death, "the same being the kind of dower which she hereby elects to take in the land." Having made the election above mentioned, she filed an amended petition in which she claimed dower according to said

election, alleging that at the time of filing her original petition she was ignorant of her true rights and interests in the premises and had been misinformed as to them by an attorney at law whom she consulted. The defense was that the widow was concluded by the election she had made in her original petition and that a subsequent election was of no effect, she having already made one. Of this opinion was the court and gave judgment accordingly. The judgment was reversed in an opinion by Judge Scott, in which all concurred.

The headnotes read as follows:

"1.   To entitle a widow to dower under the first section of the dower act (R. C. 1855, p. 668) it is not necessary that she should elect so to take. No election to take dower under the first section of the act can, as an election, take away her right to elect to be endowed under the eleventh section of said act. To overthrow this right, there must be a binding contract or such facts and circumstances as will work an estoppel *in pais*.

"2.   The institution of a suit by a widow to recover dower according to the first section of the dower act, and the declaration in the petition in such suit, which is signed and sworn to by her, that she thereby elects to take as her dower the third part of the lands of the deceased husband, will not take away her right to elect, within eighteen months after the grant of letters testamentary or of administration, to take dower under the eleventh section of said dower act."

The ruling on this point in Watson v. Watson was expressly approved by Court in Banc in Keeney v. McVoy, 206 Mo. 42, l. c. 56. In the case last mentioned, at page 54, Judge LAMM said:

"We do not take as sound the proposition  . . . that the mere passive enjoyment of her quarantine right by living under the roof and by the fireside of her husband's mansion house and partaking of her husband's plantation (all of which the law says she may do and have until her dower is assigned or she elects to take

a child's part) fixes her status as a common-law dowress and defeats her right to take a child's part. Such holding would breed confusion and perplexity. Whenever our Legislature intends such signal and drastic results shall follow her passive acceptance of the law's bounty for a month, a year, a lustrum or a decade or even two (as here) it must say so with an aye that is *aye* and a nay that is *nay*, so that its intendment is not in doubt; for as long as courts are left to inference in solving doubts, they will be solved in favor of a widow's full dower rights."

In Bretz v. Matney, 60 Mo. 444, the widow filed with the probate judge a formal, unqualified acceptance of the provisions made for her in her husband's will. Within the year she filed her renunciation: Judge NAPTON, speaking for the whole court, on page 448, said:

"Our law says, the widow shall be presumed to acquiesce in her husband's will, unless within twelve months after its probate she chooses to renounce. The year is given her to renounce, for reasons which are obvious. *Her acceptance, however repeated, amounts to nothing.* She has a year within which to make up her final intention, and there is nothing in our statute to deprive her of this right. . . .

"And the case of Light v. Light (21 Penn. St. 413), is referred to as supporting the position that an election by a widow to take under the will of her husband is an estoppel against her claiming dower, and that such election is binding on her, there being no fraud.

"We do not assume to controvert the propriety of these decisions under the statutes of the states where they were made, but our statute gives the widow twelve months within which she can reject her husband's will, and requires no formal election between the will and the law; and, we suppose, she is entitled to the twelve months allowed her by statute, *although she may formally accept the will every day in the year previous to the last.* Such acceptance is purely voluntary, and made within the period during which our statute holds her irresponsible for her acts.

"Nor can the will of the husband impose an obligation which the law does not impose. Our statute is designed to confer privileges on 'widows denied to men; and these privileges are conferred to prevent impositions upon them through their *ignorance of law* or the promptings of impulsive affection.

"The case in Pennsylvania seems to be based on the maxim that *ignorantia legis neminem excusat;* but this maxim our statute *ignores or suspends, in regard to widows, for a definite period after the death of their husbands."*

This case was affirmed in Register v. Hensley, 70 Mo. 189.

In Spratt v. Lawson, 176 Mo. 175, the husband bequeathed to his wife a legacy of $7000 to be paid to her in seven installments. She formally endorsed on the will her acceptance of this devise in lieu of dower and all other interest in her husband's estate. She accepted the first installment of $1000. It was contended that, as she was a *feme sole* under the Married Woman's Act, her formal acceptance of the will and of the $1000 estopped her from renouncing the will. The court, all concurring, held that all wills must be considered as made with reference to this statutory right of the wife, however solemn the wife's renunciation of its privileges at any time within the twelve months after the probate of the will.

In Egger v. Egger, 225 Mo. 116, the testator left an estate of the value of $300,000. By his will he gave his widow $75 per month. After the probate of the will the widow executed a formal acceptance thereof and afterwards received $75 per month up to the first renunciation and prior to a second renunciation and also received the $400 allowed to her by statute. It was held, following Spratt v. Lawson, supra, that these acts did not estop her from renouncing the will. It was further held that she could take a child's share in the personal estate without renouncing the will (page 140). In disposing of the plea of estoppel interposed as a de-

fense, the court says, at page 145: "As to the plea of estoppel, there is nothing to support it. The amounts that were paid to her were but a very small per cent of what was due her. The document she was induced to sign, dated January 9, 1902, declaring that she elected to accept the provisions of the will in lieu of dower was without any consideration at all, and it could not have misled the executor to his disadvantage."

GRAVES, WOODSON and LAMM, JJ., concurred in these rulings.

In Orchard v. Store Co., 264 Mo. 554, in an opinion by Judge BOND, concurred in by all the members of Division One, the court followed Egger v. Egger, supra, holding that the widow takes the child's share in the personal estate without reference to the will.

It is thus seen by this long array of unbroken precedents that in the case of a devise made by a husband to his wife, she is immune from the ordinary rules of election, waiver and estoppel. "Our statute is designed to confer privileges on widows denied to men; and these privileges are conferred to prevent impositions upon them through their ignorance of the law or the promptings of impulsive affection." [Bretz v. Matney, surpa.] But the ordinary rules applicable to persons *sui juris,* insisted upon in the learned dissenting opinion, would fail in this case because, as said in Garesche v. Levering Inv. Co., 146 Mo. 436, foot page 451:

"To constitute an estoppel it must appear that the party acted with full acknowledge of all the material facts and circumstances, and with knowledge of his legal rights, and that the position of the party invoking the doctrine would be changed if the matter was opened up." (Citing cases.)

The doctrine of election can have no application or relevancy, where, as in this case, the property received is less than the widow is entitled to under the statute without reference to any will. [Burgess v. Bowles, 99 Mo. 548; Ball v. Ball, 165 Mo. 327.]

Ludington v. Patton, 111 Wis. 208, 86 N. W. 571, is an instructive case. Governor Ludington left an estate worth

$1,250,000 to trustees in trust for the benefit of his widow (her provision being less than one-fourth of her legal rights), and the balance to his six children by a former marriage. The trustees, who were the executors, offered, on behalf of the heirs, to increase the provision for her to one-half the value of her legal rights. Relying upon the trustees to treat her justly and believing that she was dependent upon the heirs for what she might obtain in excess of the provision in the will, she accepted it and signed the necessary paper to consummate the transaction, conveying her interest in the estate to the trustees, and a petition to probate the will. The contract was carried out for six years. In an action to set aside the contract, without offering to restore what she had received, it was held that the trustees held a fiduciary relation and that her failure to take her legal rights grew out of a mistake of law, relievable in a court of equity as readily as a mistake of fact. The analogy is obvious.

V. It is further contended by appellants that the statute authorizing a widow to renounce her husband's will has no application to bequests of personal property; hence it cannot avail the respondent in this appeal from the order of distribution of the personal property. True

——: ——. it is that a bequest of personal property to
——: Bequest a widow does not bar her dower in real estate.
of Personalty. [Halbert v. Halbert, 19 Mo. 453.] But if the bequest be in lieu of dower the widow cannot accept the bequest and also have dower. She is put to her election. [Pemberton v. Pemberton, 29 Mo. 408.] Appellants claim in their petition for an order of distribution that the respondent had occupied the homestead and accepted the $200 monthly allowance under clause two of the will; hence the renunciation was of no effect and she was precluded from taking a child's part in the personal estate. Respondent cannot take partly under the will and partly under the statute. One who accepts a beneficial interest under a will thereby adopts the whole will. This was so held in Wood v. Trust Co., 365 Mo. 511, where the

widow took all the personal and real estate devised to her, and then claimed dower in land in Missouri. It was held that, not having renounced the will, she could claim nothing outside of its provisions. The respondent, having renounced the will, cannot be precluded by it from taking her share of the personal estate.

The question raised by this appeal has been settled by repeated decisions of this court. It has become a rule of property. The rule of *stare decisis* is founded on considerations of sound principles of public policy, it being indispensable to the due administration of justice. [15 Cyc. 916.] The judgment is affirmed.

*Walker, C. J., Woodson* and *D. E. Blair, JJ.,* concur; *Graves, J.,* dissents in separate opinion in which *Elder, J.,* concurs; *J. T. Blair, J.,* dissents.

GRAVES, J. (dissenting).—I dissent in this case, and for reasons which follow.

By the will she got, at least, an estate for years, in what is called the homestead place. This homestead place was worth much more than she could claim under the law. But this to my mind is a subsidiary question. The real question is, whether or not she elected to take under the will. If she did elect to take under the will then this action fails. My views on the question here involved, may be concisely stated. One who accepts the terms of a will and receives benefit under it, is estopped thereafter from denying or renouncing the will. This is horn-book law, or should be so considered. The rule, under existing laws, should apply to the widow, as well as any other beneficiary under a will. And further, whilst the widow has a given time in which to make her election, it should not be said that after she had in fact made such election (by acts or deed) that she can later disown that election, solely on the theory that she is not bound by any previous election, but can at the last day of the statutory period make a new election, and thereby over-throw what she had by her own acts, previously done. It is not really the doctrine of estoppel. It cuts

deeper than that, and turns upon the question as to whether or not she has, in fact, elected to take under the will. An election, once made, should stand, irrespective of the time it is made. Of course it could not be made until after the death of the testator, because there could be no election prior to such time.

It is true our cases have used some broad language as to the rights of a widow to elect. She is, or was, given twelve months in which to elect to take under the law, or under the will, but when she has elected, the matter is concluded. She can conclude this matter of election on the first day of her twelve months as well as on the last day, or any other day thereof. At this time she is *sui juris*, and entitled to no exemptions under the law. Her acts are just as binding upon her as the acts of any other *feme sole*, or of a man. She can estop herself both by contract and acts, just as any other citizen. She is presumed to know the law just as any other citizen is presumed to know. Her election is not changed, because of her alleged ignorance of the law. In the cases urged by respondent, it will be found that other matters determined the case. Thus in Egger v. Egger, 225 Mo. 116, there was a contract, and we ruled that the contract was without consideration. So, too, in Spratt v. Lawson, 176 Mo. 175, the wife at the writing of the will had endorsed thereon her acceptance thereof, and this becomes a matter of contract without consideration. Other cases cited are not more applicable. The case of Mosely v. Bogy, 272 Mo. 319, rules the instant case and cannot be distinguished. If that opinion is right the present is wrong. In that case we were dealing with a widower, in this with a widow—both equal under present laws.

I admit that there are broad expressions in some of our opinions to the effect that the widow has the full twelve months, and that although for eleven months, and twenty-nine days, she fully accepts the will, she can upon the last day, make another election and take under the law. In my judgment these loose expressions are wrong, and should be eliminated from the books. She can elect

by acts as well as by deed, and should be bound as any other devisee in a will. And such election can be at the first of the statutory period as well as at the last. When so shown she is bound by the election, not by estoppel *in pais* but by the fact of an election. Whether she lost or won by the election is immaterial. The single question is, did she elect to take under the will, and not whether her acts which constituted the election resulted in injury to others. I dissent for these reasons, somewhat hurriedly expressed. *Elder, J.*, concurs in these views.